## LATTIMORE MFG. CO. v. JONES et al.

(Circuit Court, M. D. Pennsylvania. October 12, 1904.)

1. PATENTS—INFRINGEMENT—MINER'S LAMP HOLDER.

The Lattimore patent, No. 415,720, for a lantern holder, to be attached to a miner's cap, claim 2, which is general in terms, is void for lack of invention, in view of the prior art. Claim 1 is valid and entitled to a limited range of equivalents. Such claim also *held* infringed.

2. SAME.

One who furnishes money to be employed in the manufacture of an infringing article, and acts as agent for its sale, may be joined with the manufacturer as a defendant in a suit for the infringement.

In Equity. Suit for infringement of letters patent No. 415,720 for a lantern holder, granted to Walter A. Lattimore, November 26, 1889. On final hearing.

. E. Hayward Fairbanks and Charles E. Breckons, for complainant.
Robert Watson and Beers & Grambs, for defendants.

ARCHBALD, District Judge. The patent held by the complainants was issued to W. A. Lattimore, November 26, 1889, and while it is one of limited range, and not very great invention, it does not seem to have been directly anticipated by anything found in the prior art. It covers a device to be attached to the caps of those who work in the mines, to hold their lamps. These lamps are small tin receptacles, shaped like diminutive coffee pots, in which oil is burned, the wick coming out of the spout, and the handle being a stout recurved hook by means of which when the men are at work the lamps are fastened for convenience on their caps or other headgear. The crudest and one of the earliest forms of holders was a taper-

ing piece of leather extending from near the peak of the hat or cap to the rim or visor, and swelling outwardly between these points, with a hole about midway to receive the hook of the lamp. Following this was one cut out of a single piece of tin, the foot of which ex-tended out over the visor, and the top of which was bent back towards the cap; while the intermediate front piece against which the body of the lamp hung had wings or side pieces projecting forward to prevent the lamp from shifting sideways, the whole device being so fashioned that it stood out from the front of the cap when in place. This form of holder is shown to have been in use as early as 1883, and, according to the evidence, has continued in service more or less ever since. The Lorsch patent (1885) was next, and is patterned not a little after these preceding devices. It consisted of a plate of metal curving outwardly and downwards, over the front of the hat or cap, with a flange or foot piece resting on the rim or visor, the handle of the lamp being hooked into a perforation at the top, and the lamp itself being set in an encircling wire frame, projecting forward from the plate, which prevented it from jarring loose or swaying from side to side. The Rock-well (September, 1889) followed next, with an attachment the upper part of which was of rigid leather, secured to the top of the cap, and the lower part a metal plate, resting upon and fastened to the visor; forward from the

leather and hinged upon it, being a rubber or leather block, carrying an eye, into which the lamp was hooked, the body of the lamp being engaged by wire arms extending forward, below. The declared purpose of the hinge was to let the lamp swing outwardly when the miner stooped, and of the arms to prevent lateral movement, while allowing s u ffi c i e n t forward movement to the lamp to accommodate it at all times to the position of the wearer. It is charged that this, like the Lorsch, was a mere paper patent, never having gone into practical use, and, if the a r m s encircled the lamp in the way depicted in the drawings, the operation assigned to them is so doubtful

that such may well have been the case. But it is not important; for, without stopping to discuss or distinguish this or either of the references, it is sufficient to say of them that, along with the device in suit, they simply represent different attempted methods of accomplishing the same result. The defendants' device is another, and the only question in the case is whether, having regard to the limited range of equivalents to which the patent in suit is entitled as shown by this review of the art, the particular form covered by it has been appropriated by them as charged.

The first two claims are relied upon to make out infringement, as follows:

"(1) A lantern holder consisting of the metallic base piece, the front piece, and the forwardly projecting top piece, having an eye for the inner end of the lantern hook, and a slot or socket for the upper part or shank of the lantern hook. (2) The combination, substantially as hereinbefore set forth, in a lantern holder of the metallic front piece, the metallic base piece, the strip of soft material secured to the front piece near the bottom thereof, and the top piece to which the lantern hook is attached."

The only thing which there is to distinguish the generalities of the second claim from preceding devices is the strip of soft material secured to the front piece near the bottom, the purpose of which, according to the specifications, is to hold the lamp away from the metal, and thus prevent the rattling which would otherwise occur. This is too ordinary and obvious an expedient, however, to be accepted as inventive, and, in addition, is so entirely to one side of the general scheme of the bracket as to stand like the wick-pick holder in the third claim, as a

mere aggregated convenience. It is also a question whether the fibrous material with which the defendants' holder is faced can be regarded as soft, within the meaning of the patent, even though it has a deadening effect. But without passing upon that, for the reasons given I am satisfied that the claim cannot be sustained.

The complainants' case, therefore, depends on the other claim, the predominant and distinguishing feature of which is the forwardly projecting top piece, having an eye for the inner end of the lamp hook, and a slot or socket for the upper part or shank of the same. This claim was considered and sustained by Judge Woolson in the Southern District of Iowa, in the unreported case of Lattimore v. Hardsocg, the infringing holder there passed upon having been manufactured under the Eisenbeis & Simmons patent. As a decision in favor of the invention, it has its value; but its only importance on the question of infringement is to show, if that, indeed, is necessary, that the device is entitled to a certain range of equivalents.

There are several forms, as indicated by the specifications, into which the complainants' holder may be cast. In one of these, the forwardly projecting top piece consists of a wire frame having a central loop or eye, with arms or brackets extending beyond it on either side, so as to make a socket or slot to receive and guide the shank of the lamp  hook; while in another [Fig. 3] it is composed of a solid plate of metal carrying an eye, and having a slit cut in its front edge. The Hardsocg Case may be regarded as showing another possibility, the

[Hardsocg]

projection there being a transverse roll or bead, intersected by a groove, having a perforation at its inner end, adapted to receive the hook of the lamp and hold it steady. In the course of their experience the complainants have evolved another, shown opposite. The top piece here is jointly made up of sheet metal and fibrous material, the former being so bent at the front edge as to make a forwardly projecting ledge, in the center of which is a slit, and directly back of that an eye, thus in express terms realizing the claim. It is this particular form that the defendants are charged with having imitated, as shown by the accompanying diagram. With

Defendants' device.

one possible exception, this has all the features of the complainants' holder, and so closely copies it in unpatented details as to warrant the charge that there has been a direct attempt to steal the complainants' trade. The distinction contended for by the defendants is that the top piece in their holder projects upwardly and not forwardly, and the question is whether this is sufficient to relieve. Functionally considered, the top piece in each is the same, the difference being merely one of form and possible degree of effectiveness. The slot in the upwardly projecting edge of the defendants' top piece may accommodate itself more completely to the various positions of the miner's head, but in mode of operation it does not differ from that of the complainants'. The contention that the top piece merely supports the lamp, lateral movement being prevented by the front plate, cannot be sustained. Not only is this shown by practical demonstration not to be the case, but it is not the position taken in the patent to the defendant Jones, under which it is supposed to be constructed. Speaking of the action when the cap of the miner is tilted forward it is said in the specifications: "The lamp being suspended between the narrow bridge piece, *, between the slot and the perforation, ***, the walls of the slot on either side of the bend, *, prevent the hook from swinging or turning sidewise." The purpose and effect of the slot and its protruding edges being the same in both devices, they must be held to be the legal as they are the mechanical equivalents of each other, regardless of the fact that the one is bent up and the other out. It would be absurd if the patent could be evaded by any such simple variance.

In this comparison it is assumed that, in describing the top piece as projecting forward, it was meant that it should project forward from the front piece to which it is attached. But except in the special form shown in Fig. 3, covered by the fourth claim (in which, by the way, the top piece, according to the specifications, is to project upwardly as well as forwardly), the terms of the patent are equally met by a top piece projecting forward from the front of the cap. The cap, like the lamp, is an implied element, both uniting to form the situation which is to be met. And except where the shank of the handle is given some such absurd, or, as Mr. Jones calls it, inadvertent, form, shown in the drawings of his patent, the cup of the lamp being larger at the bottom than the top, the eye or socket in which it swings on its hook must be forward of the cap, in order that it shall be held in an upright position and the oil not spilled when the head of the miner is erect. This is observed in the original strap and tin holders, described above, after which in a measure all that have followed are patterned, and is an essential condition of every such device. In that of the complainants', when the front piece and base piece are set close against the cap, the top piece projects outwardly from both. But, as it is stated in the specifications, the top piece, as an alternative, may be attached directly to the cap, or to the old-fashioned leather holder, without any front piece or base; in which case, when spoken of as projecting forward, this can only be true of it with relation to the cap front from which it protrudes. So in the form of holder constructed by the defendants, the front piece sets out, away from the face of the cap, which the top piece is extended back to meet. With reference to the cap, therefore, the top piece, the same as in other holders, projects forwardly, as it must to make an effective holder, and thus fulfills the patent literally. That there is in addition an upwardly bent edge, in line with the front piece, does not change the character of the top piece as outwardly projecting from the front of the cap. Either taking the patent, therefore, as the defendants would have it read, or construing it in the way which is now suggested, infringement is made out.

It is conceded that the bill should be dismissed as to the defendant Adolph Blau, who has no connection with the principal defendant Jones—trading as the Luzerne Cap Company—although he at one time had it in contemplation. It is contended that it should be also as to Casper, of which the same is true as with regard to Blau. But while Casper did not go into the company, he advanced money to Jones to start it, the known object of which was to manufacture and sell these holders, and the firm of Charles Casper's Sons, of which he is a member, have acted as agents of Jones for the sale of holders and caps from the outstart. While, therefore, his responsibility may differ in extent from that of Jones, he cannot escape liability altogether, as he asks.

Let a decree be entered sustaining the first claim of the patent, and finding it infringed by the defendants Jones and Casper, with the usual reference to a master to take an account.